FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 11 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRAND RIVER ENTERPRISES SIX )
NATIONS, LTD. and B2B USA LLC, )
                                 )
              Plaintiffs,        )
                                 )  Civil Action No.
      v.                         )
                                 )  **1:16-CV-0423**
NATIONAL DISTRIBUTORS, INC.,     )  **Jury Trial Demanded**
LAILA NOORANI and AKBAR          )
NOORANI,                         )
                                 )
              Defendants.        )

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DAMAGES

Plaintiffs, Grand River Enterprises Six Nations, Ltd. (hereinafter "GRE")

and B2B USA LLC (hereinafter "B2B") (collectively, "Plaintiffs"), file this

Complaint for a temporary restraining order, preliminary and permanent injunctive

relief and damages against National Distributors, Inc. (hereinafter "NDI"), Laila

Noorani and Akbar Noorani (collectively with NDI, "Defendants"), as follows:

## JURISDICTION AND VENUE

1.    This is civil action for false designation of origin, unfair competition, and

      trademark infringement and dilution under the Lanham Act (15 U.S.C. §

§1125 & 1114), unfair and deceptive trade practices under Georgia law, common-law trademark infringement, unfair competition and deceptive trade practices and unjust enrichment. In this action, Plaintiffs seek preliminary and permanent equitable injunctive relief, statutory damages, compensatory and/or general damages, forfeiture of Seneca® cigarette brand products held by Defendants, costs, and attorneys' fees.

2.  This Court has subject matter jurisdiction over all causes of action set forth herein pursuant to 15 U.S.C. §1121; 28 U.S.C. §§ 1331, 1338(a) and 1338(b); and 28 U.S.C. § 1367.

3.  This court also has subject matter jurisdiction over all causes of action set forth herein pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the matter in controversy exceeds $75,000.

4.  Defendants are subject to the personal jurisdiction of this Court and venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 and L.R. 3.1, N.D. Ga., because the United States District Court for the Northern District of Georgia, Atlanta Division, is the federal judicial district and division embracing the individual Defendants' place of residence and NDI's principal place of business.

## PARTIES

5.     GRE is a Canadian corporation with its principal place of business located at 2176 Chiefswood Road, Ohsweken, Ontario N0A 1MO and is the manufacturer of the Seneca® cigarette brand.

6.     B2B is a Florida Limited Liability Company with its principal place of business located at 7355 NW 35th Street, Miami, Florida 33122. B2B is authorized by the Georgia Secretary of State to do business in Georgia.

7.     Upon information and belief, Defendant NDI is a Georgia corporation created and existing under the laws of Georgia and doing business as "National Distributors, Inc." NDI's principal place of business is located at 3631 Presidential Parkway, Doraville, Georgia 30340. NDI is subject to the personal jurisdiction of this Court and may be served at the office of its Registered Agent, Laila Noorani, 3631 Presidential Parkway, Doraville, DeKalb County, Georgia 30340.

8.     Upon information and belief, Defendant Laila Noorani is the sole shareholder, director and officer of NDI. Defendant Laila Noorani is subject to the personal jurisdiction of this Court and may be served at her residence, 1963 Shenley Park Lane, Duluth, Gwinnett County, Georgia 30097.

9.  Upon information and belief, Defendant Akbar Noorani is engaged in the unauthorized sale of Seneca® cigarette brand products in Georgia. Defendant Akbar Noorani is subject to the personal jurisdiction of this Court and may be served at his residence, 1963 Shenley Park Lane, Duluth, Gwinnett County, Georgia 30097.

## FACTUAL BACKGROUND

10. The Seneca® trademark is a federally recognized trademark for the use in commerce of Seneca® tobacco, tobacco products, and associated products under Registered Trademark Nos. 2827776, 2460960 and 2422894. True and correct copies of the registrations are attached hereto as Exhibit A.

11. Since 1999, GRE has been granted the exclusive right to use and sublicense the Seneca® registered trademarks in the United States, which has been, in turn, sublicensed on an exclusive basis in Georgia.

12. GRE has been using the Seneca® mark in commerce in conjunction with its cigarette brand continuously since at least 1999 and has undertaken and contracted for marketing, advertising and management services to promote the Seneca® brand in the United States at a cost of millions of dollars per year to GRE.

4

13.  GRE does not allow any person or entity to use the Seneca® trademarks without an agreement or license.

14.  GRE's and B2B's continuous use and marketing of the Seneca® mark in conjunction with cigarette sales in Georgia, have made the brand well-recognized as referring to GRE and B2B in Georgia.

15.  Over the past two years, B2B has sold two million packs of cigarettes in Georgia under the Seneca® brand.

16.  As a result of the widespread marketing of the Seneca® brand and based on the number of sales, GRE and B2B have developed a substantial amount of goodwill in the Seneca® mark and consumers have come to associate it with its source, GRE, and GRE's exclusive Georgia distributor, B2B.

17.  The Seneca® mark is strong and is entitled to a wide scope of protection.

18.  At all relevant times discussed herein, GRE is and has been the manufacturer of Seneca® brand cigarettes.

19.  GRE is a compliant non-participating manufacturer listed as such on the State of Georgia Non-Participating Manufacturers Directory.

20.  As a non-participating manufacturer, GRE is subject to escrow payment requirements of $.0327588 in 2016 to the State of Georgia for each stick of

5

Seneca® brand cigarettes sold within the State of Georgia pursuant to
O.C.G.A § 10-13-1, *et. seq*. (the "Escrow Obligation").

21. GRE is responsible for satisfying the Escrow Obligation, even for sales of
Seneca® brand cigarettes that are sold outside of GRE's authorized
distribution channels and for which GRE would receive no compensation.

22. B2B is a licensed distributor of cigarettes and other tobacco products
authorized to do business in Georgia.

23. B2B is the sole and exclusive authorized distributor for receiving and
reselling Seneca® brand cigarettes within the State of Georgia and using the
Seneca® trademark for that purpose in the State of Georgia.

24. NDI is a distributor of cigarettes and other tobacco products in Georgia
operating under license number 0057652.

25. NDI is not, however, authorized by GRE, B2B, or any other GRE-authorized
importer or distributor to sell Seneca® brand cigarettes in Georgia or to use
the Seneca® trademark.

26. NDI purchased or acquired Seneca® brand cigarettes that are between four
and six years old (the "Expired Cigarettes") from an auction sponsored by
the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on or
before October 16, 2015.

27. Upon information and belief, the ATF seized the Expired Cigarettes outside of Georgia in an operation unrelated to GRE.

28. Through its normal course of distribution, GRE and its licensees have implemented strict quality control procedures to prevent harm to the Seneca® brand's goodwill and reputation resulting from the sale of any Seneca® brand cigarettes older than two years, as the quality of the tobacco diminishes significantly after that time.

29. In particular, distributors are required to destroy any Seneca® brand cigarettes that are past the expiration date.

30. There is also a "100% guarantee" providing for the exchange of all expired product for new product free of charge to any retail outlets. In fact, authorized importers and distributors instruct retail stores to return and replace expired product with new product.

31. These quality control procedures have been implemented because there is a material difference between new cigarettes and cigarettes older than two years.

32. Outside of two years, cigarette tobacco dries out and becomes very brittle.

33. Compared to new cigarettes, expired cigarettes have an unpleasant, harsh taste, which results in a negative experience for the ultimate consumer.

34. Expired tobacco also tends to fall out of the cigarette paper because it is dry and brittle, providing an unpleasant tactile experience for the consumer, not to mention a mess.

35. Furthermore, after two years, there is a risk of infestation of the tobacco by worms.

36. Under the best storage conditions, the shelf life of cigarettes is two years.

37. Accordingly, distributors are required to properly store their products in a manner to ensure the cigarettes remain fresh.

38. Where cigarettes are stored improperly, which GRE believes was the case after the ATF seized the Expired Cigarettes, the shelf life can be even shorter than two years.

39. Upon information and belief, Defendants have solicited (and possibly sold) the Expired Cigarettes to businesses in Georgia, including customers of B2B, which is the exclusive, authorized distributor of Seneca® brand cigarette products.

40. Upon information and belief, Defendants have approached B2B's sub-distributors, as well as individual retail outlets, and attempted to sell the Expired Cigarettes at prices well below the prevailing market price of Seneca® brand cigarettes distributed through authorized channels.

41.  Defendants' solicitation and possible sale of the Expired Cigarettes in
     Georgia is in direct violation of B2B's exclusive distribution rights for the
     sale of Seneca® brand cigarettes in Georgia.

42.  Defendants' solicitation and possible sale of the Seneca® brand cigarettes in
     Georgia infringes on GRE's trademark rights.

43.  By offering the Expired Cigarettes for sale, the quality of which is far below
     the quality of Seneca® brand cigarettes GRE allows in the marketplace
     through its authorized channels of distribution, Defendants are confusing the
     consumers and causing irreparable harm to GRE's goodwill, its Seneca®
     brand, and its reputation.

44.  NDI's sale of the Expired Cigarettes, which feature the Seneca® mark, are
     such that prospective purchasers or consumers of those goods are likely to
     be confused as to GRE's and B2B's sponsorship or approval of the Expired
     Cigarettes.

45.  Monetary damages alone are inadequate to compensate GRE and B2B for
     the damage to the Seneca® brand caused by Defendants' continuing
     trademark infringement and unfair competition because GRE and B2B
     cannot easily quantify (or reverse) the damage Defendants are causing to
     GRE's and B2B's goodwill and the Seneca® brand when consumers

purchase and use the Expired Cigarettes.  GRE and B2B have no control
over the quality of the Expired Cigarettes and, as a result, the
aforementioned valuable goodwill is also outside of Plaintiffs' control due to
Defendants' sales activities related to the Expired Cigarettes.

46.   The continued actions of Defendants pose a substantial risk of irreparable
harm to GRE, its authorized distributors, such as B2B, and Plaintiffs' GRE's
goodwill and that attendant to the Seneca® trademarks.  As a result,
Plaintiffs are entitled to a preliminary injunction (and ultimately a permanent
injunction) prohibiting Defendants' sale of the Expired Cigarettes.

47.   GRE is also entitled to either have the Expired Cigarettes destroyed or
returned to it.

48.   Plaintiffs have informed Defendants that any sale or solicitation by
Defendants of Seneca® cigarette brand cigarettes, without permission or
authority, will cause damage to GRE, B2B and to the Seneca® cigarette
brand's goodwill in Georgia, insofar as:

   a.   Defendants are infringing on the Seneca® trademark, which B2B
is legally permitted to use as the sole and exclusive authorized
distributor receiving and reselling Seneca® cigarette brand
cigarettes in the State of Georgia; and

10

      b.     Defendants have no lawful or legitimate interest in the Seneca®

            trademark and their unauthorized conduct in selling the Expired

            Cigarettes has served to dilute the Seneca® cigarette brand's

            goodwill in Georgia, as the quality of the Expired Cigarettes,

            which are old and stale, does not meet GRE' s quality control

            standards.

49.    Defendants' sale of Expired Cigarettes outside of GRE's authorized

      distribution channels further results in GRE having to incur the Escrow

      Obligation without any compensation from Defendants for this added cost

      and expense to GRE.

50.    Upon information and belief, Defendants had knowledge that the trademark

      laws protect GRE's marks; yet, Defendants willfully infringed on these

      marks by attempting to sell the Expired Cigarettes, which are materially

      inferior to the cigarettes GRE otherwise permits in the marketplace.

51.    On account of Defendants' willful infringement of GRE's trademarks and

      unauthorized solicitation of Seneca® cigarette brand cigarettes, GRE,

      though its marketer, Seneca Promotions, Inc. demanded that Defendants

      cease and desist use of the Seneca® trademark and stop all plans to go

forward with unauthorized sales of Seneca® cigarette brand cigarettes. A true and correct copy of the Demand Letter is attached hereto as Exhibit B.

52. In response, Defendants admitted that they are not an authorized distributor of the Seneca® cigarette brand, but refused to cease and desist their intentional, deliberate and wrongful misuse of the Seneca® trademark and unauthorized solicitation and/or sale of Seneca® cigarette brand cigarettes. True and correct copies of Defendants' Responses are attached hereto as Composite Exhibit C.

## COUNT ONE:

### UNFAIR COMPETITION - 15 U.S.C. § 1125(a)

53. GRE and B2B re-allege and incorporate herein the allegations of paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. Defendants are using the Seneca® trademarks in commerce by offering the Expired Cigarettes for sale, which constitutes a false designation of origin and/or false representation or description that falsely describes or represents, or tends to falsely describe or represent, that the Seneca® cigarette brand sold by Defendants are sponsored or approved by GRE and/or B2B.

55. Defendants' solicitation (and possible sales) of the Expired Cigarettes have caused and are likely to continue to cause confusion or mistake or deception

12

as to the source, sponsorship, approval or affiliation of Defendant's sale of the Seneca Cigarette brand in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56. Upon information and belief, Defendants have willfully caused, with knowledge of such false representation, the Seneca® registered mark to be used in interstate commerce, which falsely designates an origin, association, sponsorship or approval of Plaintiffs with their goods and services to Defendants' profit and Plaintiffs' damage, thus making this an exceptional case under 15 U.S.C. § 1117(a).

57. Defendants have intentionally traded on the goodwill established by the Seneca® mark by soliciting sales of less quality goods under the Seneca® mark in identical sales channels.

58. Plaintiffs have been irreparably damaged (and will continue to be irreparably damaged) by Defendants' solicitation of the Expired Cigarettes and misrepresentation as to the quality and approval by Plaintiff as to the sale of the Expired Cigarettes utilizing the Seneca® brand.

59. Defendants' sale and/or attempted sale of the Expired Cigarettes under the Seneca® mark constitute unfair competition, false designation of origin, and false description in violation of 15 U.S.C. § 1125(a).

60.   Defendants have intentionally traded on the goodwill established by
      Plaintiffs in the Seneca® mark by soliciting sales of Expired Cigarettes
      under the Seneca® mark.

61.   As a result of Defendants' wrongful conduct, Plaintiffs are entitled to
      preliminary and permanent injunctions prohibiting the sale of the Expired
      Cigarettes by Defendants, as well as mandating the Expired Cigarette's
      destruction.  Plaintiffs are also entitled to statutory damages in an amount to
      be proven at trial, including enhanced damages as allowed by law, as well as
      all reasonable attorneys' fees, costs incurred in connection with this action,
      and pre-and post-judgment interest.

## COUNT TWO:

### DILUTION - 15 U.S.C. § 1125(c)

62.   GRE and B2B re-allege and incorporate herein the allegations of paragraphs
      1 through 61 of this Complaint as if fully set forth herein.

63.   Defendants' solicitation (and possible sales) of the Expired Cigarettes
      constitute dilution in violation of 15 U.S.C. § 1125(c).

64.   Defendants' sale and/or attempted sale of the Expired Cigarettes, which are
      of lesser quality than the cigarettes GRE allows in the market through its

quality control measures, causes dilution to the distinctiveness of the Seneca® mark.

65. Defendants' sale and/or attempted sale of the Expired Cigarettes is made and maintained with the deliberate and willful intent to trade off Plaintiffs' goodwill and reputation built upon the Seneca® mark, thus making this an exceptional case under 15 U.S.C. § 1117(a).

66. Plaintiffs have been irreparably damaged by Defendants' dilution of the Seneca® brand through the sale of the Expired Cigarettes by way of damage to their goodwill.

67. As a result of Defendants' wrongful conduct, GRE and B2B are entitled to preliminary and permanent injunctions prohibiting the sale of the Expired Cigarettes by Defendants, as well as mandating the Expired Cigarettes' destruction. Plaintiffs are also entitled to statutory damages in an amount to be proven at trial, including enhanced damages as allowed by law, as well as all reasonable attorneys' fees, costs incurred in connection with this action, and pre-and post-judgment interest.

## COUNT THREE:

### INFRINGEMENT - 15 U.S.C. § 1114

68.  GRE and B2B re-allege and incorporate herein the allegations of paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.  Defendants' use of the Seneca® mark in connection with its sale and/or attempted sale of the Expired Cigarettes has already and is likely in the future to cause confusion, mistake and deception among purchasers of the Expired Cigarettes in violation of 15 U.S.C. § 1114.

70.  Consumers will be misled into believing that Defendants are associated with, connected to, approved by or otherwise sponsored or authorized by Plaintiffs to distribute cigarettes in violation of 15 U.S.C. § 1114.

71.  The conduct of Defendants has caused and will continue to cause irreparable injury and monetary damages to Plaintiffs unless and until this Court restrains them.

72.  Plaintiffs have been irreparably damaged by Defendants' dilution of the Seneca® brand through the sale of the Expired Cigarettes by way of damage to their goodwill.

73.  As a result of Defendants' wrongful conduct, GRE and B2B are entitled to preliminary and permanent injunctions prohibiting the sale of the Expired

Cigarettes by Defendants, as well as mandating the Expired Cigarettes'

destruction. Plaintiffs are also entitled to statutory damages in an amount to

be proven at trial, including enhanced damages as allowed by law, as well as

all reasonable attorneys' fees, costs incurred in connection with this action,

and pre-and post-judgment interest.

## COUNT FOUR:

### DECEPTIVE TRADE PRACTICES - O.C.G.A. § 10-1-370

74. GRE and B2B re-allege and incorporate herein the allegations of paragraphs

1 through 73 of this Complaint as if fully set forth herein.

75. Defendants, by the aforesaid acts, have engaged in conduct that causes

likelihood of confusion or of misunderstanding as to (a) the source,

sponsorship, approval of the sale of the Expired Cigarettes, (b) affiliation,

connection or association with GRE and B2B, and (c) the quality of the

Expired Cigarettes in violation of the Georgia Deceptive Trade Practices

Act, O.C.G.A. § 10-1-370 *et seq.*, including but not limited to O.C.G.A. §

10-1-372.

76. Upon information and belief, as a result of Defendants' deceptive trade

practices, Defendants have monetarily profited, and GRE and B2B have

17

been monetarily damaged (and are likely to be continuously damaged) by Defendants' aforesaid acts.

77. Unless enjoined and restrained by this Court, Defendants will continue their acts of deceptive and unfair trade practices, thereby deceiving and confusing the public and causing GRE and B2B immediate and irreparable harm.

78. As a result of Defendants' willful, deceptive and unfair trade practices, GRE and B2B are entitled to recover their costs and attorneys' fees in accordance with O.C.G.A. § 10-1-373(b).

## COUNT FIVE:

## COMMON-LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES

79. GRE and B2B re-allege and incorporate herein the allegations of paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80. Defendants' solicitation (and possible sales) of the Expired Cigarettes constitutes common-law trade name infringement, unfair competition, and deceptive trade practices in violation of Georgia law.

81. Defendants' sale and/or attempted sale of the Expired Cigarettes, which contain the Seneca® mark, is likely to cause confusion and deceive

18

consumers as to Plaintiffs' sponsorship and approval of the Expired
Cigarettes.

82. Defendants' have offered the Expired Cigarettes for sale with knowledge of
Plaintiffs' rights.

83. GRE and B2B have been irreparably damaged by Defendants' dilution of the
Seneca® brand through the sale of the Expired Cigarettes by way of damage
to their goodwill.

COUNT FIVE:

UNJUST ENRICHMENT

84. GRE and B2B re-allege and incorporate herein the allegations of paragraphs
1 through 83 of this Complaint as if fully set forth herein.

85. Defendants are attempting to distribute and/or are distributing the Expired
Cigarettes outside of GRE's authorized distribution network and no
agreement exists between GRE and B2B, on the one hand, and Defendants,
on the other hand.

86. Pursuant to O.C.G.A § 10-13-1, GRE is required to satisfy the Escrow
Obligation for each of the Expired Cigarettes sold by Defendants, just as
GRE is required to satisfy the Escrow Obligation for all Seneca® brand
cigarettes sold in Georgia. However, when Seneca® cigarettes are sold

through authorized channels, GRE collects and receives the amounts
required to be paid and deposited in accordance with O.C.G.A § 10-13-1 on
account of such sales. For example, B2B pays and remits approximately
$6.55 per carton of cigarettes it sells (an amount included in its price), which
is the amount GRE is required to deposit for the benefit of the State of
Georgia in accordance with O.C.G.A § 10-13-1. Defendants are soliciting
(and possibly already sold) the Expired Cigarettes without including this
regulatory cost in their price or remittance to GRE.

87.     Defendants are able to receive the benefit of selling the Expired Cigarettes
        significantly below market price, while GRE is forced to satisfy the Escrow
        Obligation without any contribution from Defendants.

88.     GRE's payment of the Escrow Obligation on Defendants' behalf confers a
        substantial benefit upon Defendants at a significant cost to GRE.

89.     Allowing Defendants to obtain the benefit of GRE's satisfaction of the
        Escrow Obligation is unconscionable and unjustly enriches Defendants at
        GRE's expense.

90.     As a result of these actions, GRE is entitled to damages from Defendants
        arising out of Defendants having been unjustly enriched through any sale of
        the Expired Cigarettes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs GRE and B2B pray that the Court enter judgment in their favor and against Defendants as follows:

A.     That the Court enter judgment against Defendants on all Counts above;

B.     That Defendants and any of their corporate officers, directors, affiliates, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendants, be temporarily restrained and preliminarily and permanently enjoined and restrained from selling the Seneca® cigarette brand or using the Seneca® mark or confusingly similar name or mark;

C.     That an accounting be conducted and judgment be rendered against Defendants for the following damages:

(1)     all profits received by Defendants, directly or indirectly, from their sales and/or advertising of Seneca® brand cigarettes;

(2)     all damages sustained by GRE and B2B on account of, *inter alia*, Defendants' false designation or origin, unfair competition, deceptive trade practices, and/or infringement or dilution of the Seneca® mark rights; and

(3)     actual compensatory damages in an amount not presently known but to be calculated during the pendency of this action;

D.      That such damages assessed against Defendants be trebled as provided by 15

U.S.C. § 1117 and/or increased or enhanced as provided by Georgia law;

E.      That Defendants forfeit ownership of any and all Seneca® cigarettes in their

possession to B2B or that the Court order the destruction of the same;

F.      That GRE and B2B have and recover their costs in this suit, including

reasonable attorneys' fees and expenses;

G.      That Defendants be ordered to pay pre- and post-judgment interest as

provided by law;

H.      That GRE and B2B have such other and further relief as this Honorable

Court may deem just, equitable and proper.

## DEMAND FOR JURY TRIAL

        Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs GRE and B2B demand a trial by

jury of all issues triable of right by a jury.

Dated: February **11**, 2016

**DUANE MORRIS LLP**

Steven D. Ginsburg
Ga. Bar No. 121055
*sdginsburg@duanemorris.com*
Kenneth B. Franklin
Ga. Bar No. 005773
*kbfranklin@duanemorris.com*
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309-3929
Telephone: +1 404 253 6900
Fax: +1 404 253 6901

*Counsel for Plaintiffs Grand River
Enterprises Six Nations, Ltd. and B2B USA
LLC*

# EXHIBIT A

**Int. Cl.: 34**

**Prior U.S. Cls.: 2, 8, 9 and 17**

**United States Patent and Trademark Office**

**Reg. No. 2,422,894**

**Registered Jan. 23, 2001**

**TRADEMARK**
**PRINCIPAL REGISTER**

*Seneca*

NATIVE TOBACCO DIRECT COMPANY (NEW YORK CORPORATION)
14411 FOUR MILE LEVEL ROAD
GOWANDA, NY 14070

FOR: CIGARETTES, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 6–1–1999; IN COMMERCE 6–1–1999.

SER. NO. 75–747,783, FILED 6–24–1999.

DORITT L. CARROLL, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

**United States Patent and Trademark Office**

Reg. No. 2,460,960

Registered June 19, 2001

## TRADEMARK
### PRINCIPAL REGISTER



NATIVE TOBACCO DIRECT COMPANY (UNITED STATES CORPORATION ORGANIZED UNDER TRIBAL LAW OF THE SAC AND FOX NATION, A FEDERALLY RECOGNIZED INDIAN TRIBE)

14411 FOUR MILE LEVEL ROAD

GOWANDA, NY 14070

FOR: CIGARETTES, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 6-1-1999; IN COMMERCE 6-1-1999.

SER. NO. 75-747,913, FILED 6-24-1999.

DORITT L. CARROLL, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

**United States Patent and Trademark Office**

Reg. No. 2,827,776
Registered Mar. 30, 2004

## TRADEMARK
## PRINCIPAL REGISTER

## SENECA

NATIVE WHOLESALE SUPPLY COMPANY (UNITED STATES CORPORATION ORGANIZED UNDER THE TRIBAL LAW OF THE SAC AND FOX NATION)
11037 OLD LOGAN ROAD
PERRYSBURG, NY 14129

FOR: CIGARETTES, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 6-1-1999; IN COMMERCE 6-1-1999.

OWNER OF U.S. REG. NOS. 2,422,894 AND 2,460,960.

SER. NO. 78-169,405, FILED 9-30-2002.

KATHY DE JONGE, EXAMINING ATTORNEY

# EXHIBIT B



October 21, 2015

Laila Noorani
Akbar Noorani
National Distributors
3631 Presidential Parkway
Atlanta, GA 30340-3718
License Number: 0057652

<u>Re:  Seneca Cigarettes – Cease and Desist</u>

Dear Madam and Sir:

Please be advised that I am legal counsel for Seneca Promotions, Inc. and its authorized distributors in the USA.  I am writing to address your company's unauthorized sale of Seneca cigarettes, which you appear to have purchased or acquired at an auction.   B2B USA LLC is the sole and exclusive, authorized distributor to receive and resell Seneca cigarettes within the State of Georgia and to use the Seneca trademark for that purpose in the State.

It has come to our attention that you intend to solicit and/or sell Seneca cigarettes to businesses in Georgia. This is in direct violation of the aforementioned exclusive distributorship and trademark rights.  In addition, your solicitation and/or sale is also an unfair method of competition which causes further damage to the Seneca manufacturer - Grand River Enterprises Six Nations Ltd, because your actions will cause Grand River to incur an escrow payment obligation based on state law. Finally, the quality of the Seneca product in your possession is not of a quality permitted by Grand River to be sold.  For the foregoing reasons, offering Seneca cigarettes for sale by your company without permission or authority is causing damage to Grand River and B2B USA LLC, as well as the Seneca brand's good will in Georgia.

All sales and solicitation of Seneca product by you and your employees in Georgia must cease immediately.  We demand that you destroy or return the product to B2B USA LLC immediately. In addition, the parties damaged or harmed by your conduct intend to hold you liable for any and all damages including attorneys' fees caused by your unauthorized conduct and actions. Absent hearing from you within twenty four (24) hours from receipt of this letter that you intend to cease and desist as outlined herein we will pursue legal recourse against you.

Should you have any questions, you may contact me directly at 716-783-6797.

Sincerely,

Tina M. Bardak, Esq.

464 Franklin Street    Buffalo    New York    14202    Phone: 716.381.8834    Fax: 716.381.8851

# EXHIBIT C



**DOUGLAS R. THOMPSON**
**JANICE SINGER·CAPEK**
**BAXTER L. THOMPSON**
**JARRETT E. MARTIN**

rthompson@thompsonsinger.com
jsinger@thompsonsinger.com
bthompson@thompsonsinger.com
jmartin@thompsonsinger.com

## VIA: CERTIFIED MAIL, RETURN RECEIPT REQUESTED

October 30, 2015

Seneca Promotions, Inc.
Attn: Tina M. Bardak, Esq.
464 Franklin Street
Buffalo, NY 14202

> Re:  Response to Cease and Desist Letter Dated October 21, 2015
>      Our File No. 15.164

Dear Ms. Bardak:

This firm represents National Distributors, Inc. ("National"). Any communications concerning the above captioned matter should be directed exclusively to my attention.

I am writing you in response to your initial demand letter dated October 21, 2015 (the "Demand Letter"). In the Demand Letter you state that National is not authorized to sell the products of Seneca Promotions, Inc. ("Seneca") (the "Products") and is required to cease and desist from selling any of the Products. Although National acknowledges that it is not an authorized distributor, it rejects any claim that it is prohibited from selling the Products. Once Seneca has sold its products to an authorized distributor, placing it into the stream of commerce, Seneca has no right thereafter to control the distribution of its trademarked products. See Sebastian Int'l, Inc. v. Longs Drug Stores Corp., 53 F. 3d 1073, 1074 (9th Cir. 1995) (applying first sale doctrine to diverted products being sold by a retail chain). As National has purchased the Products after Seneca has placed them into the stream of commerce, Seneca has no right to restrict National from reselling the Products. Resale of the Products by National is nether trademark infringement nor unfair competition. See NEC Electronics v. CAL Circuit Abco, 810 F.2d 1506, 1509 (9th Cir. 1987) (sale of genuine trademarked product by seller unauthorized to sell is not a violation of Lanham Act).

All Products sold by National are genuine goods that originate from authorized distributors. The quality and packaging of the product was completed by Seneca (or its agent) in the manufacturing

process; absent evidence of tainting or mishandling, an unauthorized sale does not create a material difference on the basis of quality. John Paul Mitchell Sys. v. Randalls Food Markets, Inc., 17 S.W. 3d 721, 736 (Tex. App. 2000). Accordingly, National has the right to resell the Products without authorization from Seneca under the first sale (or exhaustion) doctrine. Id. To the extent that the Seneca can substantiate the quality of Products has materially diminished, National will gladly return the Products to the manufacturer, Grand River Enterprises Six Nations Ltd ("Grand River"), for them to be replaced. In the alternative, National is open to selling the Products back to Seneca.

In addition, despite Seneca's inference that National has interfered or violated Seneca's exclusive distributorship agreement, National is not a party to such an agreement and therefore cannot be held liable for any breach of such agreement. Furthermore, National has undertaken no action to intentionally interfere with or induce a party to breach any potential exclusive distributorship agreement with National. Any action for intentional interference with contract must be predicated on more than just willing participation. See Barnwell v. Barnett & Co., 222 Ga. App. 694 (1996) (an independent wrongful act is a positive requirement for a claim of tortious interference); Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553 (2011); see also SJW Property Commerce, In. v. Southwest Pinnacle Properties, Inc., 328 S.W. 3d 121 (Tex. App. 2010) (party must show direct evidence that defendant knowingly caused or induced interference, a mere willing participation or reaping an advantage of a broken contract is not sufficient). National has merely purchased goods from a willing seller, the ATF. National has not taken any affirmative step to induce any potential breach or engaged in any wrongful conduct by purchasing the Products. Since National is not a party to an agreement with Seneca and has not induced any breach or conducted any wrongful act, any allegation that National may be liable for violating or interfering with Seneca's exclusive distributorship agreements is without merit.

Although National understands Seneca's concern regarding trademark issues, as stated above, National purchased only genuine Products that Seneca has placed in the stream of commerce. To the extent that Seneca is concerned about the resale of products from unauthorized distributors, Seneca's focus seems to be misplaced. Seneca's appropriate remedy is against authorized distributors with which it has contractual agreements governing the resale of Products; not against third parties, such as National, that merely acquire the Products from willing sellers and have the legal right to resell the Products without the authorization of Seneca.

As National has hereby informed you that they are fully within their legal rights in selling the Products, National demands Seneca cease and desist from making further unfounded allegations and claims against National regarding its resale of the Products. Should Seneca seek legal action, National will ask the court to award its costs and attorney's fees, as Seneca would have brought an action which it knew to be baseless, and National will pursue any abusive litigation claim it may have against Seneca. In addition to the remedies outline above, National will seek all other remedies and rights allowed by law and equity to prevent Seneca's abusive and unsubstantiated threats of action.

2

Again, if Seneca is only worried about the quality of the Product, National is more than willing to return the Products for a replacement or discuss selling them back to Seneca. Also, we have requested information on the status of National having the Product stamped, and once such information is provided, we will forward it to Grand River so that they will have all applicable information that they may need to file the required reports and make the necessary escrow payments.

If you have any questions regarding this matter, please do not hesitate to contact me.


Best regards,


Douglas R. Thompson, Esq.


cc: National Distributors, Inc.

15.164 Cease and Desist Ltr Response.docx



## THOMPSON SINGER
### ATTORNEYS AT LAW

DOUGLAS R. THOMPSON
JANICE SINGER-CAPEK
BAXTER L. THOMPSON
JARRETT E. MARTIN

rthompson@thompsonsinger.com
jsinger@thompsonsinger.com
bthompson@thompsonsinger.com
jmartin@thompsonsinger.com

November 19, 2015

## VIA: CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Tina M. Bardak, Esq.
Seneca Promotions, Inc.
464 Franklin Street
Buffalo, NY 14202

   Re: Cease and Desist Letter Follow-Up
   Our File No.: National Distributors, Inc. - Cease and Desist Letter Response - 15.164

Dear Ms. Bardak:

As of the date of this letter, we have not received a response to our letter dated October 30, 2015, responding to Seneca Promotions, Inc.'s ("Seneca") cease and desist letter dated October 21, 2015 (the "Original Letter"). Georgia law provides that, when in the ordinary course of business, good faith requires an answer, it is the duty of the party receiving a letter from another to answer it within a reasonable time. If the party fails to do so, it shall be presumed that they admit (or consent) to the acts in the letter. O.C.G.A. § 24-14-23. Since Seneca was asked to respond if they wished to repurchase or replace the subject cigarettes and has failed to do so within a reasonable time, it is presumed that Seneca has declined to do so and waives any objection to the quality or sale of the cigarettes. As such, National Distributors, Inc. is justifiably relying on Seneca's silence and intends to proceed with selling the subject cigarettes.

If the above statements do not accurately reflect Seneca's position, or if you have any questions concerning this letter, please contact me as soon as possible

     Best Personal Regards,

     Douglas R. Thompson, Esq.

Cc: National Distributors, Inc.

15.164 Follow Up Letter